**GLADYS BELLE OIL CO. v. CLARK et al.**

No. 19502.   Opinion Filed Feb. 17, 1931.

212

Hulette F. Aby, William F. Tucker, and Frank Settle, for plaintiff in error.

Randolph, Haver, Shirk & Bridges and F. E. Riddle, for defendants in error.

ANDREWS, J. The Stebbins Oil & Gasoline Company, hereinafter referred to as plaintiff, instituted suit in the district court of Tulsa county against the Gladys Belle Oil Company and H. E. Clark. Three causes of action were attempted to be stated in the petition. The prayer was for judgment against H. E. Clark on the first and third causes of action and against H. E. Clark and the Gladys Belle Oil Company, jointly and severally, on the second cause of action. H. E. Clark filed a cross-petition against the Gladys Belle Oil Company and prayed judgment against it.

At the conclusion of the evidence of the plaintiff, the trial court sustained the demurrer of H. E. Clark to the evidence of the plaintiff as to the third cause of action and overruled the demurrer of H. E. Clark as to the plaintiff's first and second causes of action. At the conclusion of all of the evidence the trial court directed a verdict in favor of the defendant H. E. Clark against the plaintiff on its first and second causes of action. A verdict in accordance therewith was rendered, and a judgment was entered in favor of the defendant H. E. Clark and against the plaintiff. At the conclusion of all of the evidence, the court directed a verdict in favor of the plaintiff and against the Gladys Belle Oil Company. A verdict was returned and the judgment was entered in favor of the plaintiff against the Gladys Belle Oil Company. At the conclusion of all of the evidence, the issues between the defendant H. E. Clark and the defendant Gladys Belle Oil Company were submitted to a jury, and the jury, after deliberation, failed to agree and was discharged by the court. Those issues have not been determined and are now pending in the district court of Tulsa county and no judgment has been entered thereon.

The plaintiff and the Gladys Belle Oil Company each appealed to this court.

The first proposition presented by the Gladys Belle Oil Company is:

"Where parties reduce their contract to writing, all oral negotiations, statements, representations, and inducements leading up to the execution thereof are merged therein and the rights of the parties must be determined and measured by the terms of the written instrument itself."

The proposition as stated is correct, with certain exceptions. Roth v. Roach, 115 Okla. 199, 242 Pac. 201. As to the issues between the Gladys Belle Oil Company and H. E. Clark, neither the proposition as stated nor the exceptions are applicable, for the reason that those issues have not been determined and are now pending before the district court of Tulsa county.

The same proposition is presented by the plaintiff. As to it the record shows that the Gladys Belle Oil Company and H. E. Clark entered into a written contract under date of March 12, 1923, in which the Gladys Belle Oil Company, in consideration of one dollar and other good and valuable consideration, granted H. E. Clark a six-day option within which to examine the property therein described and the title thereto and to accept or reject an undivided three-fourths interest therein upon certain terms and considerations thereinafter set out. The other one-fourth interest was to be retained by the Gladys Belle Oil Company. The written contract provided for a division of the proceeds from the leased premises and a division of the profits, but it made no reference to losses. The rule stated could not apply, for the reason that the testimony complained of does not tend to vary or vary the terms of the written contract in that that testimony pertained to losses, and the original written contract made no reference to losses. The record further shows that this defect in the original contract was discovered at once, that it was called to the attention of

Mr. Stebbins, the president of the Gladys Belle Oil Company, and that a supplemental contract, in writing, providing for a division of the losses, was executed on the same day as the original contract. The testimony shows that the intention of the contracting parties was to have such a provision included in the original contract and that it was left out of the original contract by reason of a mutual mistake between the parties thereto. The fact that a supplemental contract in writing was executed on the same day, providing for a division of the losses, shows the intention of the parties that the same should have been included in the contract. D'Yarmett v. School District No. 27, 72 Okla. 124, 179 Pac. 20.

Though there had been no intention to provide for a division of the losses and no mutual mistake in the execution of the original contract, that contract at best was but a six-day option which H. E. Clark could accept or reject. When he discovered that the contract made no provision for a division of the losses, he was permitted within the six-day period to reject the option. Within the six-day period he called the attention of Mr. Stebbins to his contention, and the supplemental agreement in writing was executed within the six-day period and, according to the record, on the day of the execution of the original contract. The two instruments together constitute the contract. Smith v. Ferguson, 96 Okla. 150, 221 Pac. 447. Thereafter the option was accepted by H. E. Clark. That acceptance was based on the written contract as supplemented in writing. That constituted consideration. Brown v. Coppadge, 54 Okla. 88, 153 Pac. 817. In view of the record, it cannot be said that the testimony in any way tended to vary the terms of the written instrument. It merely explained the reason for the execution of the supplement to the original contract.

The second proposition presented by the Gladys Belle Oil Company is as follows:

"It is error for the court to direct a verdict against a party unless, after eliminating from consideration all evidence unfavorable to such party, it can be fairly said that there is no evidence, nor any inferences or conclusions that may reasonably be drawn from the evidence, that would justify a verdict in favor of such party."

Since the trial court did not direct a verdict in favor of H. E. Clark and against the Gladys Belle Oil Company, the Gladys Belle Oil Company is not in a position to make such a contention as to H. E. Clark, and as to H. E. Clark it will be disregarded.

Inasmuch as a verdict was directed against the Gladys Belle Oil Company and

in favor of the plaintiff, we will consider the proposition as between those parties. As between them, this record shows that G. C. Stebbins was president of each of the companies. The plaintiff had taken this oil lease in its own name for the use and benefit of the Gladys Belle Oil Company. R. G. Dobbs was the local manager of the Gladys Belle Oil Company. Mr. Stebbins told him to go to the Frick-Reid Supply Company and procure the property and deliver it to the Allen Drilling Company, which company had the contract to drill four wells on the property. On the 11th day of March, 1923, Mr. Dobbs, the agent for the Gladys Belle Oil Company, directed the Frick-Reid Supply Company to deliver the property to Mr. Allen of the Allen Drilling Company. Mr. Stebbins had arranged with the Frick-Reid Supply Company for it to be charged to the plaintiff. Mr. Dobbs told the Frick-Reid Supply Company to let Mr. Allen have the property as directed by Mr. Stebbins. On that date, the 11th day of March, 1923, the first shipment of the casing was furnished under that order by the Frick-Reid Supply Company on the order of Dobbs, the local manager of the Gladys Belle Oil Company, delivered to Allen and charged to the plaintiff. The remaining invoices were thereafter ordered by Allen and delivered to him under the same authority. Thereafter the plaintiff settled with Frick-Reid Supply Company for the material involved in this proceeding. The Gladys Belle Oil Company never paid for the same or made any settlement therefor. When Mr. Stebbins arranged with the Frick-Reid Supply Company for the furnishing of the material for the Gladys Belle Oil Company, to be charged to the plaintiff, he acted for both companies, and both companies ratified his action. The Gladys Belle Oil Company ratified it by accepting the material and the plaintiff ratified it by paying the Frick-Reid Supply Company for it. The Gladys Belle Oil Company, having received the material, cannot be heard to say that it should not pay the plaintiff for it.

The petition of the plaintiff alleged "That supplies and casing had been arranged for on the credit of this plaintiff to be used in the development of oil and gas leases aforesaid to the amount of $10,000 or $12,000, if needed." At the time of the trial permission was asked and authority was granted to amend that paragraph by substituting the following: "That the casing and supplies referred to in said paragraph had already been purchased by the plaintiff prior to making said contract." That allegation in the petition, as amended, is

supported by the record that shows the contract for the purchase of the material to have been made on the day before the contract between the Gladys Belle Oil Company and H. E. Clark.

Under the allegation of the second cause of action and the evidence, the Gladys Belle Oil Company was liable to the plaintiff on an implied contract to pay for the goods it received under those circumstances. First National Bank v. Matlock, 99 Okla. 150, 226 Pac. 328. There was no evidence to the contrary. There was nothing to submit to a jury, and the trial court was justified in directing a verdict in favor of the plaintiff and against the Gladys Belle Oil Company. That judgment is affirmed.

As to the contention of the plaintiff and the propositions asserted by it as to the law, we have heretofore affirmed the judgment in favor of that company against the Gladys Belle Oil Company and shall consider only its contention that it is entitled to a judgment against H. E. Clark.

The trial court sustained a demurrer to the evidence of the plaintiff as to its third cause of action. The third cause of action was intended to plead an "account stated." The plaintiff contends that:

"Where there is a mutual account existing between two parties and after the close thereof, the creditor mails an itemized statement of the account, showing the final balance due, which is received by the debtor and retained by him without objection, such act constitutes an account stated."

The only case cited in support of its contention is Lamont Mercantile Co. v. Piburn, 51 Okla. 618, 152 Pac. 112. While it was held in that case that what constitutes a reasonable time in which to make objections to a statement of account is ordinarily for a jury to determine in the light of material circumstances, it was not there held or intended to be held that the mere mailing of a letter to another created an account stated.

The letter which is alleged to be the basis of the account stated was not signed by anyone and does not purport to show to whom the amount stated is due. It was addressed to Mr. H. E. Clark and reads as follows:

"Dear Sir: Hereinbelow you will find a list of invoices of Frick Reid Supply Company, covering casing and other material delivered by that company to the J. P. Bradley lease in section 33-15-16, Union county, Ark., and used by you in drilling four wells thereon during March and April, 1923, under your contract with the Gladys Belle Oil Company:

"Date Shipd. Invoice No. Material Amount
"1-11-23 11878H Casing $936.65
"(Other items totaling $12,384.15.)"

The instrument does not show to whom H. E. Clark is indebted or that he is alleged to be indebted to anyone. If it had been received and answered, the answer would naturally have been directed to the Frick-Reid Supply Company. There is nothing therein indicating a necessity for an answer to anyone else. There is nothing in the instrument in anyway connecting the plaintiff with it and nothing from which it can be inferred that the plaintiff was contending that H. E. Clark owed it anything.

Passing without discussion the question as to whether there can be an account stated other than between merchants and customers, we quote from 1 R. C. L., page 215, as follows:

"* * * The mere presentation of a claim, although not objected to, cannot of itself create a liability. Moreover the account rendered must be unambiguous and clearly indicate the nature and extent of the demand. 27 L. R. A. 821, 825; 29 L. R. A. (N. S.) 346"

—and from I Corpus Juris, page 693, as follows:

"An account rendered to which assent is claimed by reason of a failure to object thereto must show the amount claimed to be due, and give on its face detailed information of the items comprised therein, and show that it is intended as a final adjustment of the matters in account. And it must in terms make the person to whom it is rendered a party or clearly make known the grounds upon which it is sought to hold him as debtor"

—and from page 695:

'Thus, a person cannot be charged, as upon an account stated, for the debt of another, because of his having retained the account without objecting to it"

—and from page 699:

"An account stated cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed. * * *"

When the letter in question is examined under those statements and the authorities cited in support thereof, it is evident that it is wholly insufficient to constitute the basis of an account stated.

An account stated is waived by bringing an action upon the original account. Black v. Wickett, 127 Okla. 53, 259 Pac. 642; Branum v. Burns, 121 Okla. 5, 247 Pac. 58; Oklahoma Hay & Grain Co. v. T. D. Randall & Co., 66 Okla. 277, 168 Pac. 1012. Since

the first cause of action is on the account, the third cause of action on account stated, under those authorities, must fail.

Where the facts tending to show the account stated are undisputed, the question as to whether the transaction amounts to an account stated is for the determination of the court. Williams v. Casparis Bros., 113 Okla. 51, 238 Pac. 438. The burden of proving an account stated is on the one asserting it, and, where no competent evidence is offered in support thereof, there is nothing to submit to a jury. McDonald v. McLaughlin, 32 Okla. 584, 123 Pac. 158. Under that rule the trial court sustained a demurrer to the evidence of the plaintiff. There was no error in so doing, and that portion of the judgment is affirmed.

In the first cause of action the plaintiff attempted to sue on an open account. The letter hereinabove quoted in our discussion of the account stated was attached to the petition as an itemized statement of account. The petition does not allege the correctness of the account. Section 287, C. O. S. 1921, provides that in all actions allegations of the correctness of any account, duly verified by the affidavit of the party, his agent, or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney. The section requires an allegation in the pleading of the correctness of the account. It was so held by the territorial court in Myers v. First Presbyterian Church, 11 Okla. 544, 69 Pac. 874, and in Sawyer & Austin Lumber Co. v. Champlain Lumber Co., 16 Okla. 90, 84 Pac. 1093. That rule has been followed by this court in Smith v. Cottage Home Remedy Co., 91 Okla. 87, 216 Pac. 163, wherein it was held:

"Where a plaintiff attaches a duly verified account to his petition, but does not specifically allege in the petition that the account is correct, the defendant is not required to deny the correctness of the account under oath, but may raise the issue by a general denial."

The burden was upon the plaintiff to establish its case. Parmenter, Trustee v. Douglass Tank Co., 115 Okla. 193, 241 Pac. 471; Black v. Wickett, supra.

The president of the Stebbins Oil & Gasoline Company testified, and it is not denied, that the material involved in this action was purchased by Mr. Stebbins. Mr. Stebbins was at that time the president of that company. There is no question but that the purchase was so made and that Mr. Stebbins directed the Frick-Reid Supply Company to charge the same to the plaintiff and to deliver the same to the Allen Drilling Company. The Allen Drilling Company had the contract to drill the four wells on the property. At that time, under the admitted facts in this case, the plaintiff was the holder of the legal title to the property in trust for the Gladys Belle Oil Company. The purchase was made on the day before the written contract between the Gladys Belle Oil Company and H. E. Clark was executed and six days before H. E. Clark accepted the option to purchase the leasehold interest. Clark at that time had no interest in the lease. The arrangements made must have been by Stebbins for the benefit of the Gladys Belle Oil Company. It could not have been for the benefit of H. E. Clark, for Clark was at that time unheard of. There was no sale of the material by the plaintiff to H. E. Clark and no agreement by H. E. Clark to pay for the same. There was nothing due from H. E. Clark, on account, to the plaintiff.

The record as to the first cause of action shows no facts from which either the trial court or a jury could have inferred that the plaintiff ever sold H. E. Clark anything or that H. E. Clark owed it anything on account. There was no error on the part of the trial court in directing a verdict for the defendant H. E. Clark on the first cause of action, and that portion of the judgment is affirmed.

The second cause of action is founded on an alleged implied contract. It is the contention of the plaintiff that a contract by H. E. Clark to pay that company for the material purchased by it from the Frick-Reid Supply Company and used in the operation of the lease in question was implied. In First National Bank v. Matlock, supra, it was said that in quasi contracts the obligation arises "from the law of natural, immutable justice and equity." There is nothing in this record showing such "natural, immutable justice and equity" as requires H. E. Clark to pay the plaintiff for merchandise furnished by it to the Gladys Belle Oil Company. Natural, immutable justice and equity, as shown by this record, requires that the plaintiff collect from the Gladys Belle Oil Company, to which it furnished the material.

In First National Bank v. Matlock, supra, this court announced as a correct and just principle of law that a party is not bound to pay for services of another unless he has conducted himself so that his assent to pay for such services may be fairly inferred. There is nothing in the conduct of H. E. Clark, as shown by this record, from which

it may be inferred that he agreed to pay the plaintiff for this material.

If any contract between the plaintiff and H. E. Clark is implied, it must be from his transactions with the Gladys Belle Oil Company. The record shows that H. E. Clark told Mr. Stebbins that it would be impossible to get casing for the operation of the lease for from two weeks to 30 days, and that Mr. Stebbins told him that the Gladys Belle Oil Company had protected itself with casing and had a lot in the yard. The material was furnished and the Gladys Belle Oil Company was credited by H. E. Clark for the amount thereof. He testified that he never at any time had any dealings with the plaintiff with reference to the furnishing of material and that he never consented that anyone furnish the material other than the Gladys Belle Oil Company. Mr. McFan, who had charge of Mr. Clark's business, testified that Mr. Clark asked Mr. Stebbins whether or not he could furnish the casing and that Mr. Stebbins told him that the Gladys Belle Oil Company had some casing that could be furnished, that they would furnish it, and that he would make arrangements for the casing to be furnished on account of the quarter interest of the Gladys Belle Oil Company. He did not know anything about the plaintiff having anything to do with the furnishing of the material and he dealt only with the Gladys Belle Oil Company. Mr. Dobbs, manager of the Gladys Belle Oil Company, testified that he had some casing delivered and that it came from the Frick-Reid Supply Company, where it was held subject to his or Mr. Stebbins' order. He said that Mr. Stebbins called him from Little Rock, Ark., and told him to deliver the casing to Mr. Allen, and that it was so delivered and went out to the lease in question. His testimony is corroborated by the written invoices to the plaintiff. He said, "I gave Mr. Allen an order for it and went down to Frick-Reid's with Mr. Allen and told Frick-Reid's man I wanted the casing sent out there; that ·Mr. Stebbins had told me to."

The contract between the Gladys Belle Oil Company and H. E. Clark provided, among other things, that, in the event H. E. Clark exercised his option to purchase three-fourths of the property, he was to "* * * pay all of the cost of developing and operating said property, and all other expenses in anywise connected with said lease since the purchase thereof by the Stebbins Oil and Gasoline Company. * * *"

The plaintiff relies upon a statement in Elliott on Contracts, section 2111, that a third party may maintain an action on a promise made to another for his benefit, and cases holding to that effect. We do not question that rule, but it applies only when a contract is made for the benefit of a third person and not where a contract is made for the benefit of the contracting parties alone. The contract in question, while it provided that Mr. Clark was to pay the cost of developing and operating the property, was for the benefit of the Gladys Belle Oil Company and not for the benefit of a third party, and there is nothing in it to indicate an intention to benefit any third person. It was a developing and operating contract by which one party agreed, as a part of the consideration for the purchase of an oil and gas mining lease, to develop and operate the property and to pay the cost of development and operation thereof. It is in nowise a contract made for the benefit of a third party.

The plaintiff says in its brief:

"The contracting parties did contemplate in writing and executing the contract that the defendant, H. E. Clark, would purchase material from third parties. The contracting parties further had in mind that the said Clark would pay the said third parties for such material, which he expressly agreed to do."

We do not agree with that statement. So far as the contracting parties knew, as reflected by the contract, Mr. Clark may have had all the material necessary for the development and operation of the lease. It was a mere contract of Clark to hold the Gladys Belle Oil Company harmless from any cost of operation or development, and, until supplemented by the supplemental contract thereafter executed, the Gladys Belle Oil Company would probably not have been liable for any portion of the cost of operation and development of the property. With the supplement it became an agreement that Clark would advance the money to pay the cost of operation and development and the Gladys Belle Oil Company would pay its proportionate share of the loss, if any, resulting from the transaction.

The plaintiff cites the case of Tulsa Fuel & Manufacturing Co. v. Gilchrist Drilling Co., 79 Okla. 82, 190 Pac. 399. The decision in that case was based on a statement of this court therein, as follows:

"From all the evidence in the case, the jury could infer that the defendant, in effect, requested the plaintiff to drill the well; that it directed the location of the well, knew of the drilling thereof, and received reports of the progress which was being made."

The decision is correct, but it has no ap-

plication to the case here, for the reason that none of the conditions existing there existed in this instance.

Our attention is called to no case holding that where A. contracts with B. to develop and operate a property for the joint use of A. and B. and to pay the cost of development and operation, that A. will be liable to some individual who furnishes B. with material, without the knowledge or consent of A., which is used by A. under an agreement with B., and we know of no such case. There is nothing in First National Bank of El Reno v. Gillette, 52 Okla. 341, 152 Pac. 1084, affecting the issue in this case.

Security Trust & Savings Bank v. Gleichmann, 50 Okla. 441, 150 Pac. 908; McKenney v. Campbell, 104 Okla. 182, 230 Pac. 228; and Bentley v. Zelma Oil Company, 76 Okla. 116, 184 Pac. 131, deal with authority of corporate officers. They are not in point here, for, while under those holdings the Gladys Belle Oil Company would be liable to the plaintiff, there is nothing in them making H. E. Clark liable to the plaintiff. Furthermore, the action of Mr. Stebbins as president of the plaintiff was ratified by that company when it arranged with the Frick-Reid Supply Company for the payment of the purchase price. If Mr. Stebbins violated his obligation and exceeded his authority as president of the plaintiff, it could have repudiated the transaction. It did not do so, but settled with the Frick-Reid Supply Company and sued the defendant H. E. Clark on an open account for merchandise sold and delivered. It cannot now be heard to say, as against H. E. Clark, that its president did not have authority to furnish the material to the Gladys Belle Oil Company.

We quote the further statement from the brief of the plaintiff as follows:

"The Stebbins Oil & Gasoline Company had purchased the property in question for its own use, but it did not have an immediate use for same; it simply sold the material to the Gladys Belle Oil Company and H. E. Clark as an accommodation to assist them in developing the lease. * * *"

The record shows nothing to support that statement as to H. E. Clark. If it sold the material at all, it sold it to the Gladys Belle Oil Company.

We have discussed the various contentions at length and conclude by stating that the record in this case shows nothing that would authorize a judgment in favor of the plaintiff against H. E. Clark, or any defense to a judgment against the Gladys Belle Oil Company, in favor of the plaintiff. There was no evidence in the record that would have warranted the trial court in submitting those issues to the jury. There was no error in directing the verdict for the plaintiff against the Gladys Belle Oil Company and the verdict for H. E. Clark against the plaintiff. The cause was regularly tried, the issues properly determined, and the judgment of the trial court is in all things affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., absent.

Note.—See under (1) 6 R. C. L. p. 825; Perm. Supp. p. 1829; (2) 6 R. C. L. p. 251; R. C. L. Perm. Supp. p. 1840; R. C. L. Continuing Perm. Supp. p. 271; (6) 6 R. C. L. p. 587; R. C. L. Perm. Supp. p. 1765; R. C. L. Continuing Perm. Supp. p. 260; (9) anno. 27 L. R. A. 821; 29 A. L. R. (N. S.) 334 et seq. 1 R. C. L. p. 215; R. C. L. Perm. Supp. p. 52; R. C. L. Continuing Perm. Supp. p. 6.